JOHN CREWS v. THE STATE.

No. 7032. Decided June 7, 1922.

1.—Robbery—Evidence—Bill of Exceptions.

Where the objection to the question, whether anybody ever shot at the State's witness, etc., was promptly sustained, there was no reversible error, although the question may have been immaterial as no such injury as insisted upon by appellant, could have resulted from the mere asking.

2.—Same—Evidence—Motive—Collateral Matters—Rule Stated.

The motive which operates upon the mind of a witness when he testifies is never regarded as immaterial or collateral matter. The adverse party may prove declarations of a witness which tend to show bias, interest, or prejudice, or any other mental state or status which, fairly construed, might tend to effect his credibility.

Appeal from the District Court of Erath. Tried below before the Honorable J. B. Keith.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*W. J. Oxford,* for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Conviction is for robbery, carrying a punishment of confinement in the penitentiary for a period of five years.

Primo Facci and his wife were Italians living about two miles from the town of Thurber in Erath County. On the night of August 9, 1921 two men appeared at their home about midnight and by the use of firearms compelled Facci and his wife to submit to robbery of their persons and premises. During the progress of the robbery the handkerchief or mask over the face of one of the men slipped down and he was recognized as the appellant by Mrs. Facci. Other circumstances were proven which would also tend to show that appellant and one Tom Fuller were the robbers. The testimony of Alonzo Leedy is that appellant admitted to him that he and Fuller committed the robbery.

Ed. Taylor, a State's witness, was asked by counsel representing the State if he knew whether or not appellant was in Thurber the night before the trial, to which he replied, " I never saw him, I saw him there yesterday evening," whereupon the district attorney asked the further question, "Did somebody shoot at you three times through your window last night?" Appellant objected to this question, which was sustained by the court. It is urged that the asking of the question should be held by us to be reversible error on the ground as asserted that it was calculated to prejudice the rights of appellant before the jury. It is urged in the bill that there was no evidence tending remotely to connect appellant with such shooting and was calculated to impress the jury with the idea that appellant had undertaken to assassinate a State witness. These latter matters appear in the bill as grounds of objection, and reasons why the testimony is prejudicial. We are not willing to say that the question was so necessarily harmful in its character as that the asking of it alone would require a reversal at our hands. The objection to the question was promptly sustained and the bill stripped of the grounds of objection simply shows that the witness was asked if he had seen appellant in Thurber on the night before the trial, to which he replied that he had not, but had seen him in the afternoon. It is asking this court to go too far to indulge the presumption that the further question, "If someone shot at the witness" necessarily carried with it the imputation that it was appellant who fired the shot. The question as it appears from the bill was immaterial and objection was properly

sustained, but we think no such injury as insisted upon by appellant could have resulted from the mere asking of it. . After Alonzo Leedy had testified to material matters for the State and had left the courtroom he was immediately approached by Mitchell Freeman, a witness for appellant. Freeman told Leedy substantially that he Freeman knew what Leedy had testified, and that while he had nothing against him (Leedy) that if the latter did not go back in the courtroom and change his testimony that he (Freeman) "would go to hell with him." While Freeman was testifying for appellant the State asked if he had not made such statement to Leedy, which he denied. The court then permitted the State to prove by Leedy and Taylor that Freeman had made such statement. The laying of the predicate and the proof following it is objected to as having been upon a collateral matter and injurious to appellant. The court instructed the jury that such testimony could not be considered by them upon the question of the guilt of appellant and that it was no evidence of his guilt, but that it was admitted alone upon the question as to whether or not it affected the credibility of the witness Freeman. In Branch's Ann. Pen. Code, page 93, Section, 163, we find this general statement.

"The motives which operate upon the mind of a witness when he testifies are never regarded as immaterial or collateral matters. The adverse party may prove declarations of a witness which tend to show bias, interest or prejudice or any oter mental state or status which fairly construed might tend to affect his credibility."

Many cases are cited by Mr. Branch supporting the proposition. It was proper for the State to show the statement of the witness Freeman as bearing upon his credibility and the matter having been limited by the court to that issue alone, we find no error.

The judgment of the trial court will be affirmed.

*Affirmed.*